IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CHERYL R. RUSSELL,                )
                                  )
    Plaintiff,                   )
                                  )
vs.                               )       Civil Action No. 11-0267-CG-B
                                  )
CITY OF MOBILE, et. al.           )
                                  )
    Defendants.                  )
                                  )

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the court on the motion for summary judgment (Doc. 75) filed by the defendants, the City of Mobile (the "City") and Sybil Thomas ("Thomas") (collectively, the "defendants"). The court has reviewed the parties' briefs in support and opposition, and the matter is now ripe for resolution. For the reasons stated below, the defendants' motion for summary judgment is due to be **GRANTED**.

## I. FACTUAL BACKGROUND

The plaintiff, Cheryl R. Russell ("Russell"), is an African-American woman and a former public safety dispatcher ("PSD 1") with the City of Mobile Police Department ("Mobile Police Department" or "police department"). Doc. 1 at 2. In 1997, Russell was diagnosed with Graves' disease, an endocrine disorder affecting the thyroid gland. Doc. 80-1 at 1. The most frequent symptoms of Graves' disease include: nervousness and increased activity, increased sweating, hypersensitivity to heat, palpitations,

fatigue, increased appetite, weight loss, tachycardia, insomnia, and weakness.  Harris v. H&W Contracting Co., 102 F.3d 516, 522 (11th Cir. 1996).

Russell began her employment at the Mobile Police Department in June 2001.  Doc. 1 at 3.  As a PSD 1, Russell worked a variety of shifts at the police department's 911 Communications Center ("communications center").  Doc. 76 at 1-2.  A PSD 1 is supervised by a radio communications officer ("RCO"), who reports to the unit commander.  Id.  The unit commander (normally a police sergeant or lieutenant) reports to a police captain, who in turn reports to a police major, and on up the chain of command to the deputy chiefs of police, chief of police, and finally, the mayor.  Id. at 1-2.  Thomas, also an African-American woman, was a lieutenant in the Mobile Police Department and became the unit commander of the communications center in November 2007.  Id. at 2.

Russell alleges that her former colleagues and supervisors at the communications center frequently harassed and ridiculed her due to her race and her Graves' disease during her employment at the communications center.  Doc. 80-1 at 2.  She also claims to have filed 8 grievances citing harassment or "improper treatment" during her tenure as a PSD 1, although she cited no evidence to support this claim.  Id. at 4.

Russell admits that she "cannot recall all the dates and times that she was harassed," Doc. 80-1 at 2; however, the instances of harassment Russell

does claim to recall are: an October 2008 incident in which Russell requested permission to use a space heater at her work station but was denied due to concerns about the amount of power a heater would draw from the electrical supply to the communications equipment (Doc. 80-1 at 4 and Doc. 77-2 at 6); a February 2009 incident in which Thomas chastised and ridiculed Russell for her requests to periodically stand and stretch at her work station while she was on duty (id. at 3) (citing Doc. 77-1 at 29)[1]; a June 2009 incident in which Russell requested a transfer to the position of public information officer, but was denied due to the fact that the transfer would have constituted a promotion and been accompanied by higher pay (Doc. 76 at 4 and Doc. 77-1 at 41); a July 2009 incident in which Russell, citing fatigue from a recent medical procedure, requested a change in her duties and was "verbally harassed" by Thomas.  Doc. 80-1 at 6.  Russell further alleges that as Thomas yelled at her, Russell started to feel ill and called the Mobile Fire and Rescue Department for medical attention.  Id.  This culminated with emergency medical personnel examining Russell and providing Thomas with a copy of Ms. Russell's protected medical information before they left. (Doc.

---

[1] The court notes that Russell also claims in her summary judgment brief that "other employees were allowed to stand and move about the 'floor' work area."  Doc. 80-1 at 3.  Russell cites her own deposition testimony to support this allegation.  Doc. 77-1 at 29.  The court will not consider this allegation, however, because a close reading of the deposition transcript reveals that Russell has merely cited defense counsel's question, rather than her own sworn testimony.  Id.  A second reference to the allegation that other employees were permitted to stand and stretch at their work stations is without citation.  Doc. 80-1 at 3.

80-1 at 5-6).  Additionally, Russell also alleges a May 2010 incident in which a supervising RCO approached Russell as she was sitting in her car during a break and asked whether Russell going to commit suicide (id. at 3); and a June 2010 incident in which Russell's car allegedly was vandalized while parked at the communications center (id. at 4-5).

In addition to harassment, Russell alleges that the City terminated her due to her race and disability.  Doc. 80-1 at 8.  Russell last reported to work on April 5, 2010,  when she submitted a request for medical leave to begin on April 6 extending through October 1, 2010.  Id. at 4.  Her request was accompanied by a doctor's certificate stating that Russell's expected date of return to work was October 1, 2010.  Id. at 7.  The City approved Russell's request, stating that she could request a continuation of her leave of absence by completing another leave form and submitting an updated doctor's certificate.  Id. at 8.

Shortly before the first leave period was due to end, Russell submitted a second leave request on September 26, 2010, and requested an extension of her medical leave until April 1, 2011.  Id. at 9.  The second request was also accompanied by a doctor's certificate stating that Russell's expected return to work date was "never."  Id. at 12.  The City responded to Russell in an October 21, 2010, letter which noted that "[y]our physician's statement indicates that it is expected that you can 'never' return to work," and stated that "the Mobile Police Department" is not obligated to keep your current

position open for you knowing that you will not be able to return." Id. at 13.

The City then granted Russell's leave request through December 31, 2010 to

give her time "to evaluate [her] employment options." Id. Russell submitted

a third leave request on January 1, 2011, requesting medical leave until April

1, 2011. Id. at 14. The City granted this third leave request. Id. After this

her third leave period expired on April 1, 2011, the City received no further

communication from Russell. Id. at 15. Accordingly, the City deemed Russell

to have resigned her employment with the police department on April 1,

2011. Id.

Russell filed two EEOC Charges of Discrimination ("EEOC Charges")

in connection with her employment at the Mobile Police Department. The

first was dated August 1, 2009 (the "2009 EEOC Charge") and alleged that

Thomas violated the Americans with Disabilities Act ("ADA") by engaging in

an improper medical inquiry when she asked Russell questions about her

recent medical procedure and by requesting Russell's medical information

from Mobile Fire and Rescue Department personnel. Id. Russell filed the

second EEOC Charge on April 7, 2011 (the "2011 EEOC Charge") (Doc. 77-

17), and alleged that she was terminated due to her disability on December

31, 2010. Id. at 3. Russell also stated that she was "forced to take a leave of

absence because [she] was harassed due to [her] race and disability and

because [she] filed a previous EEOC Charge of Discrimination."[2] Id.

---

[2] Russell alleged in the 2011 EEOC Charge that her supervisors retaliated

Russell filed the instant lawsuit on May 20, 2011 (Doc. 1), and filed a third amended complaint on March 20, 2012 (Doc. 23).

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party

---

against her for the 2009 EEOC Charge. Doc. 77-17 at 3. However, Russell did not allege retaliation in the Complaint, nor did she mention it in her summary judgment brief. See, generally, Doc. 23 and Doc. 80-1.

bears the burden of proving that no genuine issue of material fact exists.
O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In
evaluating the argument of the moving party, the court must view all
evidence in the light most favorable to the non-moving party, and resolve all
reasonable doubts about the facts in its favor.  Burton v. City of Belle Glade,
178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds might differ on
the inferences arising from undisputed facts, then a court should deny
summary judgment."  Hinesville Bank v. Pony Exp. Courier Corp., 868 F.2d
1532, 1535 (11th Cir. 1989) (citing Mercantile Bank & Trust v. Fidelity &
Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies her initial burden under Rule 56(a), the non-
moving party "must make a sufficient showing to establish the existence of
each essential element to that party's case, and on which that party will bear
the burden of proof at trial." Howard v. BP Oil Co., 32 F.3d 520, 524 (11th
Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).
Otherwise stated, the non-movant must "demonstrate that there is indeed a
material issue of fact that precludes summary judgment."  Clark v. Coats &
Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may
not rely merely on allegations or denials in its own pleading; rather, its
response .... must be by affidavits or as otherwise provided in this rule be set
out specific facts showing a genuine issue for trial."  Vega v. Invsco Group,
Ltd., 2011 WL 2533755, *2 (11th Cir. 2011).  "A mere 'scintilla' of evidence

supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation and citation omitted).

### III. ADA DISCRIMINATION CLAIM (COUNT ONE)

### A. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The defendants argue that Russell both failed to exhaust the administrative remedies available for her ADA discrimination claims and that those claims are time-barred. Doc. 76 at 13-14.  Russell disputes this. Doc. 80-1 at 10-11.

Before bringing a Title VII action in federal court, a plaintiff must file a timely charge of discrimination with the EEOC.  See Zipes v. TWA, 455 US 385, 393 (1982).  Likewise, to assert a claim under the ADA, an employee "must comply with the same procedural requirements to sue under Title VII," and thus, a timely EEOC charge is required under the ADA as well." Houston v. Army Fleet Services, LLC, 509 F.Supp.2d 1033, 1040 (M.D. Ala. 2007).  A charge not made within 180 days of the alleged discriminatory

action becomes time barred.  42 U.S.C. § 2000e–5(e)(1).  The scope of the judicial complaint is limited to the allegations made in the charge of discrimination and claims that "can reasonably be expected to grow out of the charge of discrimination."  Gregory v. Ga. Dept. of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004) (internal quotation marks and citations omitted). In other words, "judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint," while "allegations of new acts of discrimination are inappropriate."  Id. at 1279–80 (quoting Wu v. Thomas, 863 F.2d 1543, 1547 (11th Cir. 1989)).  "The purpose of this exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.' " Gregory, 355 F.3d at 1279 (quoting Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 929 (11th Cir. 1983)).

### (1) 2011 EEOC Charge

Russell filed her more recent EEOC Charge on April 7, 2011 (the "2011 EEOC Charge") (Doc. 77-17).  The 2011 EEOC Charge alleges that Russell was terminated due to her race and disability on December 31, 2010, id. at 3, and thus the court has little trouble finding that Russell has exhausted her administrative remedies with regard to this timely allegation.

Russell was considerably more vague as to her other allegations of ADA discrimination contained in the 2011 EEOC Charge, however, saying

only that she was "forced to take a leave of absence because [she] was harassed due to [her] race and disability ..." Id. While a reasonable EEOC investigator may have pursued even vague allegations of harassment, all instances of ADA discrimination that Russell went on to allege in her complaint and opposition brief either fall beyond the 180-day threshold of the 2011 EEOC Charge or are silent as to the date. See e.g., Doc. 23 at 6-7, ¶20-22 ("...in June 2010, it is believed that Supervisor Thomas and other members of the Department conspired to ...vandaliz[e] [Russell's] vehicle ... in the same year, Supervisor Thomas physically assaulted the Plaintiff ... [i]n the months that followed Plaintiff was transferred from her original supervisor...") (emphasis added). Therefore, Russell's other supposed allegations of ADA discrimination alluded to in the 2011 EEOC Charge are time-barred.

**(2) 2009 EEOC Charge**

Russell filed the older EEOC Charge on August 1, 2009 (the "2009 EEOC Charge"). Doc. 77-15. The 2009 EEOC Charge is more specific and narrowly-focused than the 2011 Charge, alleging that on July 14, 2009, Thomas engaged in an improper medical inquiry by asking Russell questions about a recent medical procedure and by requesting and obtaining medical information from Mobile Fire and Rescue Department personnel whom Russell called to the communications center after feeling ill. Id. As with her discriminatory termination allegation, supra, the court has little difficulty in

10

finding that Russell has properly exhausted her administrative remedies with regard to this timely allegation.

As for the other instances of ADA discrimination that Russell alleges in her complaint and opposition brief, none pertain to an improper medical inquiry, and none "arise out of" her 2009 EEOC Charge such that Russell can be said to have exhausted her administrative remedies for these allegations.

Accordingly, the only two allegations of ADA discrimination which are timely and administratively exhausted are (1) Russell's allegation that she was terminated based on her disability and (2) her allegation that Thomas engaged in an improper medical inquiry.  Summary judgment is due to be granted as to all other allegations of ADA discrimination.

## B. ADA CLAIM AGAINST THOMAS IN HER INDIVIDUAL CAPACITY

Russell's complaint states a claim against Thomas "in her official and individual capacities as Lieutenant and Radio Communications Officer Supervisor."  Doc. 23 at 1.  The defendants argue that summary judgment on Russell's disability discrimination claim is due to be granted in favor of Thomas because the statute "does not provide for individual liability, only for employer liability."  Doc. 76 at 23 (quoting Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996)).  Russell does not address this point in her opposition brief.  See Doc. 80-1 at 14-18.  As stated, supra, "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." Shamburger v. City of Mobile, 2008 WL 2874363 at *1 (S.D. Ala. 2008) (citing

Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995)).

Given Russell's lack of argument on this point, the court finds that the

defendants' summary judgment motion is due to be granted with regard to

Thomas in her individual capacity on Count One.

### C.  ADA CLAIM AGAINST THE CITY

The ADA prohibits discrimination "against a qualified individual on

the basis of disability…" 42 U.S.C. § 12112(a).  The Eleventh Circuit has

explained that to establish a prima facie case of disability discrimination

under the ADA, a plaintiff must show that (1) she has a disability; (2) she is a

qualified individual; and (3) she was discriminated against because of her

disability.  Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193

(11th Cir. 2004) (citing Williams v. Motorola, Inc., 303 F.3d 1284, 1290 (11th

Cir. 2002); Gordon v. E.L. Hamm & Assoc., Inc., 100 F.3d 907, 910 (11th Cir.

1996)).  If the plaintiff establishes a prima facie case, a presumption of

discrimination arises and the burden shifts to the defendant to proffer a

legitimate, non-discriminatory reason for the employment action.  Id.  If the

defendant meets its burden, then the plaintiff must show that the proffered

reason is a pretext for discrimination.  Id.

### (1) Russell's Claim of Discriminatory Termination

The court need not analyze whether Russell meets the first prima facie

element (establishing that she is disabled) because it finds that Russell

cannot meet the second prima facie element of establishing that she is a

qualified individual.

To determine whether a person is a "qualified individual" under the ADA, a plaintiff must show that she can perform the essential functions of the employment position that she holds, with or without reasonable accommodation.  42 U.S.C. § 12111(8); Holly v. Clairson Industries, L.L.C., 492 F.3d 1247, 1256 (11th Cir. 2007); Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001).  "The Eleventh Circuit has held that in addition to possessing the required skills necessary to perform the essential job functions, an employee must be able to demonstrate those skills by reporting to work on a regular basis, thereby making attendance an essential function of most jobs."  Leslie v. Cumulus Media, Inc., 814 F.Supp.2d 1326, 1347 (S.D.Ala. 2011) (citing Jackson v. Veterans Admin., 22 F.3d 277 (11th Cir.1994)).  The City asserts that Russell is not a "qualified individual" because she cannot perform an essential function of her job -- regular attendance --because her physician stated that Russell was "never" expected to return to work.  (Doc. 76 at at 24-25) (citing Doc. 77-11 at 12).  The court agrees.

If a disabled employee requires an accommodation to perform the essential functions of her job, she must make "a specific demand for an accommodation" and must prove that the proposed accommodation is reasonable.  See, e.g., Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363–64 (11th Cir. 1999).  While Russell alleges in her complaint that

she made "several requests for medical leave and minor accommodations over the course of her career," Doc. 80-1 at 4, and received "an extensive period of [m]edical [l]eave," id. at 8, there is no evidence that she requested any other accommodation from the City in the months prior to her termination other than requesting an indefinite period of medical leave, as evidenced by the fact that Russell's doctor, Daniel Polensky, indicated that she was "never" expected to return to work.[3]  Doc. 77-11 at 12.  Russell's request for a leave of absence so that she could return to work at some uncertain point in the future was not request for reasonable accommodation.  See Wood v. Green, 323 F.3d 1309, 1313–14 (11th Cir. 2003) (providing that "[t]he ADA covers people who can perform the essential functions of their jobs presently or in the immediate future [ ]").  Accordingly, Russell was not a "qualified individual" under the ADA when her employment with the City came to an end and cannot meet the second element of a prima facie case of disability discrimination on this point.

### (3) Medical Inquiry Under §12112(d)(4)(A)

Russell claims that Thomas demanded proof of prior medical treatment and later the same day requested Russell's personal medical

---

[3] Russell argues that the doctor's certificate indicating that Russell was "never" expected to return to work "also contain[s] a place for the next expected visit or review," the implication being that Russell's doctor might have amended his opinion at a future examination.  Doc. 80-1 at 18.  However, the doctor's certificate does not support this conclusion – it says nothing about any further "review" and only indicates when Russell's next expected visit to the doctor's office will be.  Doc. 77-11 at 12.

information from Mobile Fire and Rescue Department personnel who responded to Russell's call for emergency medical assistance.  Doc. 23 at 5-6.  The ADA prohibits an employer from "mak[ing] inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A).

The defendants assert that Russell cannot present evidence of damages which are required to maintain a claim for a violation of § 12112(d)(4)(A).  The court agrees.  Even assuming that Russell has established for summary judgment purposes that Thomas made an improper medical inquiry, Russell has not shown evidence of, or even alleged, a cognizable injury-in-fact necessary to recover damages.  Mickens v. Polk County School Board, 430 F.Supp.2d 1265, 1278 (M.D. Fla. 2006).  "Damages under section 12112(d) of the ADA must be based not merely on a technical violation of the statute but on some cognizable injury-in-fact of which the statutory violation is a legal and proximate cause."  Id. (citing Tice v. Centre Area Transportation Authority, 247 F.3d 506, 520 (3d Cir. 2001) (holding that "there is no indication in either the text of the ADA or in its history that a technical violation of § 12112(d) was intended to give rise to damages liability").  See also Cossette v. Minn. Power & Light, 188 F.3d 964, 971 (8th Cir. 1999) (remanding for a determination as to whether the improper

medical inquiry caused a "tangible injury" capable of supporting the suit);
Armstrong v. Turner Indus., Inc., 141 F.3d 554, 562 (5th Cir. 1998)
(dismissing for lack of a cognizable injury an ADA claim for damages based
on an improper medical examination).  An injury-in-fact under § 12112(d)
requires not only "allegations of mental/emotional distress, mental anguish,
stress, and inconvenience" as a result of the improper medical inquiry but
also requires "evidence as to the actual existence of such harms." Tice, 247
F.3d at 520.

Instead of evidence of an injury, Russell argues that "[u]nlawful
inquiries into one's medical history … is a form of harassment and more
generally described in the complaint as 'discrimination', 'harassment', 'denial
of reasonable accommodations afforded to non-disabled employees.' " Doc. 80-
1 at 18 (generally citing Doc. 23).  But absent from this argument are any
allegations or evidence of loss of sleep, loss of appetite, social stigma, loss of
companionship, increased stress, loss of focus, clinical depression, or any
other legally cognizable measure of non-economic injury that occurred as a
result of Thomas' alleged violation of §12112(d)(4)(A).  While Russell does
generally allege these sorts of symptoms throughout the Complaint and her
summary judgment brief, see, generally, Doc. 23 and Doc. 80-1, none of them
are alleged to have occurred as a proximate result of Thomas' purported
violation of §12112(d)(4)(A).  Instead, Russell's discussion of her physical
symptoms are related to her Grave's disease.

Accordingly the court finds that the defendants' summary judgment motion is due to be **GRANTED** with regard to Russell's ADA discrimination claim (Count One).

## IV. RACE DISCRIMINATION CLAIMS (COUNT TWO)

The defendants also argue that Russell's race discrimination claims are time-barred, and not administratively exhausted.  Doc. 76 at 12-14.

The 2009 EEOC Charge makes no mention of racial discrimination. Doc. 77-15.  The 2011 EEOC Charge, on the other hand, contains the allegation that Russell "was forced to take a leave of absence because [she] was harassed due to [her] race and disability ..." yet Russell provides no details about what form this harassment took.[4]  Doc. 77-17 at 3.  Thus, the defendants argue that Russell's only race discrimination claim to have been presented to the EEOC was her termination claim, and that all other race discrimination claims are barred.  The defendants also point out that all allegations of race discrimination stated in the Complaint and Russell's summary judgment brief (other than the termination claim) took place more than 180 days prior to the 2011 EEOC Charge.  Doc. 76 at 13; Doc. 93 at 6-7.

Russell counters by citing Gregory, supra, to argue that all of her allegations of race discrimination can reasonably be held to fall within the

---

[4] The only specific allegation included in the 2011 EEOC Charge, a shouting match between Russell and co-workers Grissett and Koger, allegedly took place in March 2010, and thus falls more than 180 days beyond the Charge. Id.  Furthermore, Russell did not did not specify either a racial element or a disability element in this allegation.  Id. ("Ms. Koger interfered with the performance of my job and Ms. Grissett yelled at me over the radio.").

scope of the EEOC's investigation into her 2011 charge, regardless of whether they fall beyond the 180-day threshold. Doc. 80-1 at 11. She apparently believes that Gregory stands for the proposition that the 180-day requirement for bringing an EEOC Charge is waived or otherwise not applicable whenever a plaintiff alleges that "I was harassed due to my race." Doc. 80-1 at 11. Thus, according to Russell, she can sue the defendants for discriminatory acts that took place more than 180-days prior to her 2011 EEOC Charge, including "actions that predate the year 2009." Id.

Russell's argument and her understanding of Gregory are flawed. Gregory does not turn unexhausted administrative remedies into exhausted ones, nor turn untimely claims into timely ones. In Gregory, the plaintiff filed a timely EEOC Charge in which she alleged certain specific instances of discriminatory treatment that occurred "shortly before" she was terminated, not years before she was terminated. Gregory, 355 F.3d at 1280. On her EEOC Charge sheet, the Gregory plaintiff checked the boxes marked "race" and "sex" discrimination but not "retaliation." Id. at 1279. When she later sued in federal court, the Gregory plaintiff alleged the same facts as in her EEOC Charge but also asserted a retaliation claim. Id. The Eleventh Circuit held that the facts of the retaliation claim "were inextricably intertwined with her complaints of race and sex discrimination" contained in the EEOC Charge. Id. at 1280. In other words, the EEOC investigation of the plaintiff's claims "would have reasonably uncovered any evidence of retaliation" even

though she only checked the "discrimination" box on the charge form.  Id.  In this way, the Gregory plaintiff's retaliation claim was held to "grow out of" her discrimination claims.  See id.

The race discrimination claims that Russell discussed in her summary judgment brief do not meet this "inextricably intertwined" standard.[5]  Russell focused her race discrimination argument at summary judgment exclusively on two allegations that RCO Joyce Grissett and PSD Gloria Herrine removed her from regular and overtime shifts on the communications center schedule.  Doc. 80-1 at 12-13.  Russell is silent as to when these incidents took place and fails to mention them in the 2011 EEOC Charge.  See Doc. 23 at 7; Doc. 80-1 at 12-13; see also Doc. 77-17 at 3.  Therefore, the allegations are not administratively exhausted.  Russell also does not dispute the defendants' evidence that she has not been on RCO Grissett's shift since 2005, Doc. 77-5 at 2, or that Herrine allegedly removed Russell from an overtime shift on September 23, 2009, more than 180 days before the 2011 EEOC Charge.  Doc. 77-7 at 2.  Thus, both allegations fall considerably more than 180 days prior to the 2011 EEOC Charge and are not timely.

The only timely race discrimination allegation for which Russell properly exhausted her administrative remedies is Russell's allegation that she was terminated due to her race.  Even on this point, however, summary

---

[5] The court does not consider allegations stated in the Complaint but not included in Russell's summary judgment brief, and deems them abandoned.  Shamburger v. City of Mobile, 2008 WL 2874363 at *1 (S.D. Ala. 2008) (citing Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995)).

judgment is due to be granted to the defendants because Russell's opposition brief contains no legal argument regarding her racially-charged termination. See Doc. 80-1 at 9-22.  Because "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned," the court finds that Russell has abandoned her only timely, administratively-exhausted race discrimination claim.  Shamburger v. City of Mobile, 2008 WL 2874363 at *1 (S.D. Ala. 2008) (citing Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995)).

Accordingly, the defendants' motion for summary judgment is **GRANTED** with regard to Russell's Title VII race discrimination claim (Count Two).

## V. § 1983 CLAIM

### A. RACE DISCRIMINATION

Unlike Title VII, Russell's Fourteenth Amendment Equal Protection claim, brought by and through § 1983, is not subject to an administrative exhaustion of remedies requirement.  Harris v. Board of Trustees University of Alabama, 846 F.Supp. 2d 1223, 1242-43 (N.D. Ala. 2012).  Further, "[t]he Eleventh Circuit has held that § 1983 may be used as a parallel remedy to Title VII for race discrimination which violates the Equal Protection clause of the Fourteenth Amendment.  The elements of such a claim are the same as the elements of a Title VII action.  Bryant v. Jones, 575 F.3d 1281, 1296, n. 20 (11th Cir. 2009) (noting that § 1983 equal protection claims and Title VII

20

discrimination claims are subject to the same standards of proof and the same analytical framework).  See also Harris, supra (citing Rice–Lamar v. City of Fort Lauderdale, 54 F.Supp.2d 1137, 1145 (S.D.Fla.1998) (additional citations omitted)).

Thus, in a Title VII, § 1981, or § 1983 intentional discrimination suit, the plaintiff has the burden of establishing a prima facie case by a preponderance of the evidence.  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  This prima facie case can be established in any one of three ways: (1) by presenting direct evidence of discriminatory intent; (2) by presenting circumstantial evidence of discriminatory intent through the McDonnell Douglas test; or (3) by demonstrating through statistics a pattern of discrimination.  Earley v. Champion International Corp., 907 F.2d 1077, 1081 (11th Cir. 1990).

Where a plaintiff wishes to prove a claim of discrimination through circumstantial rather than direct evidence, the court evaluates the claims by using the McDonnell-Douglas framework, supra, under which the plaintiff must satisfy her initial burden under the statute by establishing a prima facie case of intentional discrimination.  Smith v. Lockheed-Martin Corporation, 2011 WL 2567777 at *2 (11th Cir. 2011).  To do so, the plaintiff must show that (1) she is a member of a protected class (here, African-American); (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) her employer treated her less favorably

than similarly situated individuals outside of her protected class.  Alvarez v.
Royal Atlantic Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010).  With
respect to this last showing, "the individuals must be similarly situated in all
relevant respects besides race, since different treatment of dissimilarly
situated persons does not violate civil rights laws."  Jackson v. BellSouth
Telecommunications, 372 F.3d 1250, 1273-1274 (11th Cir. 2004) (internal
citations and quotation omitted).

     Here, Russell has not pointed to any facts in the record which tend to
show that the City of Mobile treated her less favorably than similarly-
situated white co-workers.  See Doc. 80-1 at 12-13.  Although Russell made
the allegation in her complaint, Doc. 23 at 7, she mentioned this prima facie
element just once at summary judgment in a conclusory statement to the
effect that she "can show that ... similarly situated employees were treated
more favorably."  Doc. 80-1 at 13.  Notwithstanding this statement, Russell's
brief is devoid of evidence to support such her allegation.  Id. at 12-13.  While
the court must interpret all questions of fact in the plaintiff's favor at the
summary judgment phase of litigation, there must be alleged facts and
evidence on the table in order for the court to interpret them to plaintiff's
benefit.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) ( The
non-movant must "demonstrate that there is indeed a material issue of fact
that precludes summary judgment.");  Vega v. Invsco Group, Ltd., 2011 WL
2533755 at *2 ( The non-moving party "may not rely merely on allegations or

denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial.").  In the absence of such facts and evidence, the court finds that Russell has not established a prima facie case of race discrimination under the Equal Protection Clause.

### B. DISABILITY DISCRIMINATION

Russell's § 1983 Equal Protection claim also cites the defendants' alleged discrimination against her on the basis of her disability.  Doc. 23 at 10.  However, the Eleventh Circuit has held that a plaintiff may not maintain a § 1983 action in lieu of or in addition to an ADA cause of action where the only alleged deprivation is of the employee's rights created by the ADA.  Holbrook v. City of Alpharetta, Georgia, 112 F.3d 1522, 1531 (11th Cir. 1997).  Therefore, Russell may not maintain a § 1983 claim based upon violations of the ADA.

### C. NEGLIGENT HIRING AND SUPERVISION

§ 1983 provides a remedy against "any person" who, acting under color of state law, deprives another of rights protected by the Constitution.  42 U.S.C. § 1983.  Municipalities and other local government entities are included among those "persons" to whom § 1983 applies.  Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  However, to impose liability on a municipal government under § 1983, "the plaintiff must identify a municipal 'policy' or 'custom' causing the deprivation of federal rights."

Sauls v. Pierce County Sch. Dist., 399 F.3d 1279, 1287 (11th Cir. 2005).  The plaintiff must demonstrate that the municipality's "deliberate conduct" was the "moving force" behind the injury alleged.  Bd. of Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997).

Russell asserts that the Mobile Police Department's failure to train personnel demonstrated a "deliberate indifference" to the rights of members of protected classes.  Doc. 80-1 at 19.  She is correct insofar as a failure to train employees could itself constitute a governmental policy or custom for which a local government could be liable, if the failure to train evidenced a deliberate indifference to the constitutional rights of those with whom government employees came in contact.  Wyke v. Polk County School Bd., 129 F.3d 560, 568 (11th Cir. 1997) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)).  "However, to prevail on a § 1983 claim against a local government entity, a plaintiff must prove both that her harm was caused by a constitutional violation and that the government entity is responsible for that violation." Id. (citations omitted).

Here, the court has dismissed Russell's claims of race and disability discrimination, including those she alleged to be a violation of her Equal Protection rights.  See, supra.  Thus, she has not shown that there exists a genuine dispute as to any material fact which would support her assertion of a constitutional violation.  Therefore, she cannot prevail on a § 1983 claim for negligent hiring and supervision.

Accordingly, the defendants' motion for summary judgment is **GRANTED** with regard to Count Three.

## VI. STATE LAW CLAIMS

### (1) ASSAULT/MENACING (COUNT FIVE)

Russell alleges that (1) "Defendants acted **intentionally** to cause harm to the Plaintiff by forceful touching and menacing behavior;" and (2) "Thomas and Grissett acted **intentionally** to assault and menace the Plaintiff." Doc. 23 at 11, ¶¶ 41, 42 (emphasis added). She argues further that the City could or should be held liable for negligence, citing the City's "failure to enforce policy and review Ms. Russell's complaints of discrimination." Doc. 80-1 at 20-21. Unfortunately for Russell, Alabama statute and abundant case law necessitate granting summary judgment for the defendants on this claim.

Both menacing and assault are defined in the Alabama Code as intentional torts. Ex parte N.W., 748 So.2d 190, 192 (Ala. 1999) (citing Ala.Code 1975, § 13A–6–23(a)) (defining the tort of menacing); Western Union Telegraph Co. v. Hill, 25 Ala.App. 540, 542, 150 So. 709, 710 [cert. denied, 227 Ala. 469, 150 So. 711] (1933) (defining the tort of assault). For this reason, Russell cannot maintain a claim for either menacing or assault against the City. "[U]nder [Alabama Code] § 11–47–190, a city is liable for

negligent acts of its employees within the scope of their employment, **but not intentional torts of its employees.**" Brown v. City of Huntsville, Ala., 608 F.3d 724, 743 (11th Cir.2010) (emphasis added).  See Brown, 608 F.3d 724, supra; Stephens v. City of Butler, Ala., 509 F.Supp.2d 1098, 1116 (S.D. Ala. 2007); Ott v. City of Mobile, 169 F.Supp.2d 1301, 1316 (S.D. Ala. 2001).

As if that were not reason enough to grant summary judgment as to Count Five, the court notes that Russell cited no legal authority at all to support her position.  See Doc. 80-1 at 20-21.  Also, Russell contradicted her own argument regarding the City's failure to review her complaints.  Id. at 6 (citing Doc. 95-14, Letter from Capt. Amelia Brown to Russell).  By Russell's own account, the City did investigate her claim of discrimination and found it lacking.  Id.

Russell's claim against Thomas in her individual capacity is also flawed, although for different reasons.  Russell claims that on July 14, 2011, Thomas "yell[ed] at Ms. Russell in a manner that caused her to suffer physical distress," and that Russell "was left in a compromised state until she was able to phone for emergency medical assistance herself."  Doc. 80-1 at 6 (citing "Exhibit 10," Doc. 95-12).  However, the unsworn exhibit which Russell cited as evidence does not contain any facts which would support these allegations.  See Doc. 95-12.  If the court overlooks Russell's disorganized presentation of exhibits and infers that she really intended to cite "Exhibit 9" (Doc. 95-11) (Russell's unsworn narrative of the events of July

26

14, 2009) instead of "Exhibit 10" (Doc. 95-12), then things come somewhat more clearly into focus. <u>See</u> <u>id.</u> Even so, Russell's July 14, 2009, narrative is unsworn and without any indication that it was given under penalty of perjury. <u>See</u> Doc. 95-11. The court thus finds the unsworn narrative inadmissible. <u>Holloman v. Jacksonville Housing Authority</u>, 2007 WL 245555, *2 (11th Cir. Jan. 30, 2007) ("unsworn statements, even from <u>pro</u> <u>se</u> parties, should not be considered in determining the propriety of summary judgment").

Accordingly, the court finds that summary judgment is due to be granted with regard to Count Five.

## VII. CONCLUSION

For the reasons enumerated above, the court finds that the defendants' motion for summary judgment is due to be **GRANTED**.

**DONE** and **ORDERED** this 12th day of April 2013.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE